Bakas, J.
This appeal by the defendants, Dangerous Co., Inc. and Susan Parker (president and principal stockholder of Dangerous Co., Inc.) seeks to review the motion judge’s denial of their motion to dismiss.
The main thrust of the defendants’ motion taken together with the affidavits of the defendants’ attorney, Austin A. Duvernoy, and the defendant, Susan Parker, challenges the court’s power to exercise personal jurisdiction over the defendants. In short, the defendants, a New York corporation and a New York resident respectively, assert that the Massachusetts long-arm statute, G. L. c. 223A, § 3(a), does not confer personal jurisdiction as it respects the circumstances presented by the instant case.
The complaint, couched in four counts, is accompanied by an affidavit of one Marge Goodman, who, at all times relevant, was the exclusive New England representative of the defendant, Dangerous, Co., Inc.
G. L. c. 223A, is entitled, Jurisdiction of Courts of the Commonwealth over Persons in other states and countries; and, under sec. 1 a corporation is deemed to be a person. Section 3 is entitled, Personal Jurisdiction Based Upon Acts or conduct within (the) Commonwealth, and the language thereunder states that,
A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person’s (a) transacting any business in this commonwealth;...
The essential facts relative to the matter before us indicate that the defendants) are engaged in the business of buying and reselling wholesale jewelry through a network of representatives located across the country; and, the plaintiff (a Massachusetts corporation) is engaged in the business of manufacturing and selling costume jewelry to retail establishments and wholesale distributors. As hereinabove indicated, both defendants are a New York corporation and a New York resident, respectively, without an usual place of business in Massachusetts. The relevant transaction before us occurred in August of 1986 when the defendant(s) initiated the purchase of specially manufactured jewelry from the plaintiff via a telephone purchase order to *48 Massachusetts, followed by an appropriate written confirmation. In accordance therewith the Massachusetts plaintiff prepared the defendant(s) special order and thereafter, in September of 1986 the plaintiff shipped the jewelry requested via Federal Express to the defendant(s) in New York. Payment was due on or before November 1, 1986, and late payment was subject to 1.6 percent interest per month. The defendant(s) not only failed to pay for the jewelry aforesaid (involving $3,322.) but avoided numerous requests by the plaintiff to resolve the matter.
Although not relevant to our determination, it is noteworthy that there was an instance when the defendant, Susan Parker, issued a check which was returned three times for insufficient funds (which could very well have been a factor in terms on her personal liability, had the case been tried on the merits). However, inasmuch as both defendants intentionally defaulted for failure to file an answer to the plaintiffs complaint (which alleges the defendant(s) failure to pay for goods sold and delivered; and, further asserts claims pursuant to G. L. c. 93A) a meritorious defense by the defendant, Susan Parker, if any, is not before us. Beyond this we note that the affidavit of Marge Goodman reveals that as the exclusive New England sales representative of the defendants) in Massachusetts she serviced fourteen (14) retail stores in Massachusetts with individual orders ranging from $200 to $2,000 per store; and, further, that the defendant(s) products were sold to Massachusetts retailers via personal sales calls and through the Woman’s Apparel Club of New England’s trade shows (held 5 times per year) at the Bayside Exposition Center in Boston, Massachusetts. In addition, Marge Goodman, was directed by the defendant(s) to promote, sell and service the defendant(s) accounts in Massachusetts; and, indeed, that some of the products sold in Massachusetts by Marge Goodman for the defendant(s) were products that had been manufactured and delivered by the plaintiff to the defendant(s) in New York.
There is no question, and we so conclude, that the defendant(s) either directly or bv an agent transacted and that the alleged cause of action arose from such transaction. Goodhope Industries, Inc. v. Ryder Scott Co., 378 Mass. 1 (1979), Balloon Bouquets, Inc. v. Balloon Telegram Delivery, Inc., 18 Mass. App. 935 (1984). The long-arm statute “reflected a legislative attempt to create a new basis of jurisdiction” in order to provide a local forum to persons such as the plaintiff for causes of action arising out of activities of nonresidents within our state. DeLeo v. Childs, 304 F. Supp. 593.
As was said by the Supreme Judicial Court in Carlson Corp. v. University of Vermont, 380 Mass. 102 (1980), “_in testing a claim of personal jurisdiction over a nonresident defendant, we must first determine whether the defendant’s conduct comes within the literal terms of G. L. c. 223A. Only then do we consider whether the exercise of jurisdiction in the particular case would be consistent with basic requirements of due process mandated by the United States Constitution... there can be no doubt that physically signing a contract in Massachusetts is in literal terms, transacting business in Massachusetts, if the cause of action arises from the contract.”
It should be noted too, that, in the Carlson case it was the plaintiff (Massachusetts resident) who initiated the contractual relationship in Vermont with the defendant (Vermont resident) .... whereas, in the instant case, the defendant(s) (New York residents) initiated the contractual/sales relationship with the plaintiff (Massachusetts resident) in Massachusetts via a purchase order (telephone and written confirmation) to Massachusetts.... and pursuant thereto, the plaintiff manufactured and otherwise prepared the *49 defendant(s) order in Massachusetts, and, thereafter, transported the specially made jewelry to the defendant(s) in New York.... and the cause of action that ensued arose from this contractual/sales relationship. We further conclude, that, on the strength of the rationale set forth in Carlson and the cases cited therein, we discern no constitutional infirmity in the instant case as it pertains to the matter of due process.
With regard to the hearing on the assessment of damages, we find no error by the assessment judge in taking no action on the defendant(s) request for a ruling (which we interpret as a denial), Caccavaro v. American Motorists, Inc., 355 Mass. 797 (1969), inasmuch as the substance of the defendant(s) request was previously embodied in the defendant(s) motion to dismiss which was denied by the motion judge, and, has hereinabove been addressed; and, further, the subject-matter of the defendant(s) request did not relate to the matter of damages.and apart from the fact that both defendant(s) were in default.the request for a ruling did not specify the grounds upon wich the request was based, but rather, the request was for a ruling from the assessment judge, to rule, “. . . . on all issues previously raised in Defendants’ Pre-Answer-Motion to Dismiss.(and) denied by Justice Tierney_” who was the motion judge. See Barsky v. Hansen, 311 Mass. 14 (1942) and Okin v. Sullivan, 307 Mass. 227 (1940).
Although the matter of attorney fees and damages is not properly before us, nevertheless, we conclude that there was no error with respect to this issue. The Consolidated Report incorporates the plaintiffs complaint, the defendants) motion to dismiss and three (3) affidavits.and, the record clearly indicates the defendant(s) intentional default after the denial of their motion to dismiss. In this context, there was a sufficient basis before the assessment judge during the assessment hearing to assess single damages under G. L. c. 93A for unfair or deceptive acts or practices and/or for damages for goods sold and delivered. It is obvious that the assessment judge did not find the additional element of “willful or knowing” under G. L. c. 93A, consequently, the single damage award and not double or treble damages was appropriate; and, having found a violation of G. L. c. 93A, he was then required to award the plaintiff, reasonable attorney’s fees. His assessment of damages in the amount of $5,913.06, representing the principal amount of $3,322, interest $491.06 and attorney’s fees in the amount of $2,100 was proper.
For the reasons stated we find no error by the motion judge relative to his denial of the defendant(s) motion to dismiss, and, no error by the assessment judge’s decision respecting his non-action (which we deem to be a denial) of the defendant(s) request for a ruling, nor his assessment of damages (including attorney’s fees) and therefore order the Consolidated Report dismissed.
The judgment for the plaintiff is affirmed.