PER CURIAM.
In our view, the trial court abused its discretion in finding that appellant Steven Goldman (Goldman) willfully disobeyed the court’s orders dated May 6, 1987, and August 21, 1987.
The May 6, 1987, and August 21, 1987 court orders required Goldman’s appearance at a non-jury calendar call and at a case management conference, respectively in a civil suit where Goldman represented the plaintiff. Goldman maintains that he did not appear at either of the court scheduled hearings because he thought a voluntary dismissal of the case had been previously filed by his secretary.
Apparently, the voluntary dismissal had not been received by the trial court by August 10, 1987, so the matter was reset for September 2, 1987, at 8:45 a.m. According to her affidavit, Goldman’s secretary informed the trial judge’s secretary on several occasions that the case had been voluntarily dismissed and Goldman would therefore not attend any hearings, including August 7, 1987, and September 2, 1987 hearings. However, on September 2, 1987, the court file still did not contain a voluntary dismissal. Thus, when Goldman failed to appear for the second time, the trial judge’s secretary informed Goldman’s office that the trial court still had not received a voluntary dismissal. That afternoon, Goldman hand delivered a voluntary dismissal to the court, and the court furnished Goldman with a copy of the trial court’s own motion for contempt which included the notice of the contempt hearing date.
During the course of the contempt hearing, the trial court made the following comments, among others:
When August 10th came, 1987, nobody showed up in Court, and my secretary called the firm and because they didn’t show up at the calendar call she was told that the case — my secretary put a note in the file, “This case was on nonjury docket on August 10th. Mr. Goldman told me that he was sending in voluntary dismissal, never received. I called his office several times, three time, but never returned calls.”
So, being sick and tired of the law firm that Steven Goldman represents, I set again — I’ve got an open file, the Supreme Court has got a mandate on me saying that I’ve got to close files, they don’t want me to keep files open.
I get you fellows in here and you got a problem in your office, I don’t know what your problem is, I cannot get you to physically close a file.
I therefore on the 21st day of August sent out a second order setting for Case Management requiring Steven Goldman to be present in Court at 8:45 on September 2nd of 1987 and low and behold nobody shows up, nobody shows up. So, we are having a hearing on contempt. Do you have anything to say?
You’ve got a lousy procedure down there in your God blessed law office, your secretaries don’t know what the hell they are doing, your lawyers are telling me what you are doing and your secretaries don’t know and you don’t return calls to Circuit Court Judges.
*781 Jesus, if you don’t answer a phone call to a Circuit Court Judge I’d like to see what you do to your clients.
To me you genuflect and kiss the ring.
You are going to have to do a better job of managing your cases, because when you don’t show up in court you are increasing my blood pressure.
After finding Goldman in contempt, the trial court stated:
Don’t do it anymore. If you take it out of (your secretary’s) pay, maybe she’ll be a little bit more courteous.
It is apparent from the trial judge’s comments that he was exasperated with the situation and influenced by his judicial assistant’s interpretation of Goldman’s secretary’s behavior. However, the judge’s judicial assistant did not testify at the contempt hearing. Furthermore, Goldman testified that he was never requested to return a call to the judge’s office and this statement was not contradicted by any testimony.
Although we understand and sympathize with the trial court’s exasperation, the finding of willful disobedience of a court order is not supported in the record by substantial competent evidence. In determining whether a particular act constitutes contempt of court, the test is whether the nature and reasonable tendencies of the matter complained of directly affect the administration of justice. Harper v. State, 217 So.2d 591 (Fla. 4th DCA 1968), cert. discharged, 224 So.2d 684 (Fla.1969). In the instant case, Goldman’s conduct did not evince a willful disregard for the orderly administration of justice.
In the future, it would behoove Goldman to more closely monitor his files so that a court is not inconvenienced, hampered or offended by the conduct of his office staff. Had Goldman simply checked the court file once he was alerted to the fact that the voluntary dismissal had not been received by the trial court, this entire matter would not have occurred. However, although Goldman could have done more to assist the trial court in resolving this matter, his conduct did not evince a willful disregard for the orderly administration of justice.
We therefore reverse the order of contempt.
DELL, GUNTHER and WARNER, JJ., concur.